**NO. 22-4221**

In The

# United States Court Of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## JONG WHAN KIM,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON**

————————

## DEFENDANT - APPELLANT JONG WHAN KIM'S
OPENING BRIEF

————————

Michelle A. Liguori
ELLIS & WINTERS LLP
4131 Parklake Avenue
P. O. Box 33550
Raleigh, NC 27636
(919) 573-1294

Scottie F. Lee
ELLIS & WINTERS LLP
P. O. Box 2752
Greensboro, NC 27402
(336) 217-4085

*Counsel for Appellant*

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES...................................................................iv

STATEMENT OF SUBJECT-MATTER AND
APPELLATE JURISDICTION ........................................................ 1

ISSUES PRESENTED ........................................................................2

INTRODUCTION ..............................................................................2

STATEMENT OF THE CASE.............................................................5

    A.    Mr. Kim's background and medical training................................ 6

    B.    Tammy Thompson ..................................................... 8

    C.    Dr. Kim's Adult Care Clinic........................................... 9

    D.    District court proceedings ........................................... 10

        1.    Retained counsel, motion to withdraw, and
               appointment of counsel ..................................... 10

        2.    Guilty plea ................................................... 12

               a.    First plea agreement and change-of-plea
                    hearing........................................... 12

               b.    Second plea agreement .............................. 14

               c.    Second change-of-plea hearing .................... 15

        3.    Sentencing................................................... 17

    E.    Appeal, and <u>Ruan v. United States</u> ................................22

i

SUMMARY OF THE ARGUMENT ............................................................. 23

ARGUMENT ......................................................................................... 24

I.      Mr. Kim's Guilty Pleas Are Constitutionally Invalid Because
        He Was Not Informed that, on a Section 841(a)(1) Charge,
        the Government Must Prove that a Physician Knowingly or
        Intentionally Acted in an Unauthorized Manner ........................ 24

        Standard of Review ........................................................... 24

        Discussion ...................................................................... 26

                A.      Under Ruan, the Government Must Prove that
                        a Physician Charged under Section 841(a)
                        Knowingly or Intentionally Acted in an
                        Unauthorized Manner .............................................. 26

                B.      The District Court's Acceptance of Mr. Kim's
                        Guilty Pleas Was Plain Error Because Mr. Kim
                        Was Not Correctly Informed of Section 841(a)'s
                        Mens Rea Requirement ............................................. 27

                C.      There Is a Reasonable Probability that Mr. Kim
                        Would Not Have Pled Guilty if He Had Been
                        Informed of the Mens Rea Requirement under
                        Section 841(a) .......................................................... 31

                D.      Allowing the Plea Agreement to Stand Would
                        Have a Serious Effect on the Fairness, Integrity,
                        and Public Reputation of Judicial Proceedings ........ 35

II.     Mr. Kim's Sentence Was Fundamentally Unfair Because
        the District Court Failed to Provide Him with a Meaningful
        Opportunity to Speak in Allocution ........................................... 37

Standard of Review ..................................................... 37

Discussion .................................................................. 38

     A.    The Background and Purposes of Rule 32 and
         Allocution.................................................... 38

     B.    The District Court's Pre-Sentence Comments
         Were Plain Error ........................................ 40

CONCLUSION ............................................................. 43

REQUEST FOR ORAL ARGUMENT ............................... 44

CERTIFICATE OF COMPLIANCE ................................... 45

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

Bousley v. United States,
    523 U.S. 614 (1998) .................................................................................27

Boykin v. Alabama,
    395 U.S. 238 (1969)..................................................................................36

Gall v. United States,
    552 U.S. 38 (2007) ................................................................... 40

Green v. United States,
    365 U.S. 301 (1961) ...................................................................39

Greer v. United States,
    141 S. Ct. 2090 (2021)...........................................................25, 32, 33, 35

Henderson v. United States,
    568 U.S. 266 (2013)........................................................................25, 28

Irizarry v. United States,
    553 U.S. 708 (2008) ................................................................. 40

Puckett v. United States,
    556 U.S. 129 (2009).........................................................................25

Rehaif v. United States,
    139 S. Ct. 2191 (2019) ......................................................... 25, 32

Ruan v. United States,
    142 S. Ct. 2370 (2022) ....................................................................passim

United States v. Alerre,
    430 F.3d 681 (4th Cir. 2005)....................................................................29

United States v. Balde,
    943 F.3d 73 (2d Cir. 2019)..........................................................25

United States v. Blume,
    No. 5:18-CR-00026,
    2022 WL 3701449 (S.D. W. Va. Aug. 26, 2022)........................................29

United States v. Brizuela,
    962 F.3d 784 (4th Cir. 2020)......................................................... 18

United States v. Carter,
    773 F. App'x 736 (4th Cir. 2019).................................................... 41

United States v. Cole,
    27 F.3d 996 (4th Cir. 1994) ........................................... 38, 41, 42

United States v. Dominguez Benitez,
    542 U.S. 74 (2004) ....................................................................32

United States v. Ellis,
    121 F.3d 908 (4th Cir. 1997).........................................................24

United States v. Herder,
    594 F.3d 352 (4th Cir. 2010) .................................................... 40

United States v. Heyward,
    42 F.4th 460 (4th Cir. 2022) ....................................................passim

United States v. Hurwitz,
    459 F.3d 463 (4th Cir. 2006)........................................................28

United States v. Landeros-Lopez,
    615 F.3d 1260 (10th Cir. 2010) ..................................................... 41

United States v. Luepke,
    495 F.3d 443 (7th Cir. 2007) ..................................................... 41

United States v. Marin,
    961 F.2d 493 (4th Cir. 1992) ....................................................38

United States v. McIver,
 470 F.3d 550 (4th Cir. 2006)................................................................13, 29

United States v. Muhammad,
 478 F.3d 247 (4th Cir. 2007) ...................................................................38

United States v. Neal,
 101 F.3d 993 (4th Cir. 1996)....................................................................43

United States v. Paladino,
 769 F.3d 197 (3d Cir. 2014) .....................................................................42

United States v. Plotts,
 359 F.3d 247 (3d Cir. 2004) .....................................................................42

United States v. Purpera,
 844 F. App'x 614 (4th Cir. 2021)............................................................28

United States v. Quinones,
 707 F. App'x 184 (4th Cir. 2017).............................................................38

United States v. Tran Trong Cuong,
 18 F.3d 1132 (4th Cir. 1994) .................................................................... 18

United States v. Wexler,
 522 F.3d 194 (2d Cir. 2008) ....................................................................29

United States v. Williams,
 811 F.3d 621 (4th Cir. 2016)....................................................................27

**Statutes:**

18 U.S.C. § 2 ................................................................................................ 1

18 U.S.C. § 922(g) ....................................................................................32

18 U.S.C. § 924(a)(2) ................................................................................32

18 U.S.C. § 3231 ......................................................................................... 1

21 U.S.C. § 841(a) ...................................................................<u>passim</u>

21 U.S.C. § 841(a)(1) .............................................................<u>passim</u>

28 U.S.C. § 1291 ............................................................................ 1

**Rules:**

Fed. R. App. P. 4(b) .................................................................... 1

Fed. R. Crim. P. 11(b)(1)(G) ..................................................... 17

Fed. R. Crim. P. 32 ....................................................................38

Fed. R. Crim. P. 32(i)(1)(C) ....................................................... 37

Fed. R. Crim. P. 32(i)(4)............................................................. 37

Fed. R. Crim. P. 52(b) ............................................................... 25

**Sentencing Guidelines:**

U.S.S.G. § 2D1.1(b)(12) ............................................................. 14

U.S.S.G. § 2D1.1(c) .................................................................... 15

U.S.S.G. § 3B1.1(a) .................................................................... 18

U.S.S.G. § 3B1.3 ......................................................................... 15

U.S.S.G. § 3B1.1(c) ..................................................................... 15

U.S.S.G. § 3E1.1(a) ..................................................................... 15

**Other:**

Celine Chan, <u>The Right to Allocution: A Defendant's Word on
    Its Face or Under Oath?,</u>
    75 Brooklyn L. Rev. 579 (2009) ............................................39

Kimberly A. Thomas, <u>Beyond Mitigation:  Towards a</u>
    <u>Theory of Allocution</u>,
    75 Fordham L. Rev. 2647 (2007) ............................................................39

"Quick Facts, Bladen County, North Carolina,"
    <u>United States Census Bureau</u>,
    https://www.census.gov/quickfacts/bladencountynorthcarolina
    (July 1, 2021). ..............................................................................................7

"Quick Facts:  Columbus County North Carolina,"
    <u>United States Census Bureau</u>,
    https://www.census.gov/quickfacts/columbuscountynorthcaroli
    na (July 1, 2021) ......................................................................................... 9

"What Is an Allocution Statement?"
    <u>American Bar Association</u> (Nov. 20, 2018)
    https://www.americanbar.org/groups/public_education/
    publications/teaching-legal-docs/what-is-an-allocution-
    statement-/..................................................................................................38

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

Jong Whan Kim was charged by indictment, including with several counts of, while a physician, prescribing opioids outside the usual course of professional practice, in violation of 21 U.S.C. § 841(a)(1), a related conspiracy charge, and aiding and abetting distribution of a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. JA8, JA39-44. The district court had subject-matter jurisdiction under 18 U.S.C. § 3231.

Mr. Kim pled guilty to the conspiracy charge, six violations of section 841(a)(1), and aiding and abetting distribution of marijuana. See JA193, JA39-40, JA43. On April 7, 2022, the district court imposed a total prison sentence of 78 months, and on the same day entered a judgment incorporating that sentence. JA133, JA148-150. Mr. Kim timely filed a notice of appeal on April 8, 2022. JA156.

This Court has jurisdiction over Mr. Kim's appeal under 28 U.S.C. § 1291 and Rule 4(b) of the Federal Rules of Appellate Procedure.

## ISSUES PRESENTED

1.  Should Mr. Kim's guilty pleas be vacated because, under <u>Ruan v. United States</u>, 142 S. Ct. 2370 (2022), he was not correctly advised of the <u>mens rea</u> requirement to convict him under section 841(a)(1)?

2.  Did the district court deny Mr. Kim a meaningful opportunity to speak in allocution, thus rendering his sentence fundamentally unfair and entitling him to resentencing?

## INTRODUCTION

During the time period relevant to this case, and for more than 15 years before, Mr. Kim was a medical doctor, serving the eastern North Carolina community. In 2017, he opened a clinic in Tabor City. Mr. Kim was charged with issuing a number of prescriptions for opioid medications, from October 2017 to June 2018, that were outside the usual course of professional practice and not for a legitimate medical purpose, in violation of section 841(a)(1).

The government offered Mr. Kim a plea deal, in which he would plead guilty to having issued six opioid prescriptions to a confidential informant and the informant's father, in violation of section 841(a)(1). Consistent with Fourth Circuit law at the time, in the plea agreement, the government stated

that, to convict him of these offenses, it would have to prove that Mr. Kim acted intentionally and that the prescriptions were outside the usual course of professional practice and other than for a legitimate medical purpose. Mr. Kim signed the plea agreement.

At his change-of-plea hearing, the district court similarly advised Mr. Kim, consistent with Fourth Circuit law at the time, that, to prove him guilty of the offenses involving opioid prescriptions, the government would have to prove that the prescriptions were outside the usual course of professional practice and other than for a legitimate medical purpose. Neither the plea agreement nor the district court informed Mr. Kim that, to convict him, the government would have to prove that he <u>subjectively</u> intended to issue prescriptions that were outside the usual course of professional practice and were other than for a legitimate medical purpose. Nonetheless, the court accepted Mr. Kim's pleas and, following a sentencing hearing, entered judgment.

Mr. Kim noticed an appeal, and while his appeal was pending, the Supreme Court decided <u>Ruan</u>. <u>Ruan</u> emphasized that prescribing practices among physicians are not uniform.  142 S. Ct. at 2377-78.  Accordingly, the Supreme Court held that, to convict a physician of issuing prescriptions

outside the usual course of professional practice, if the defendant makes an initial showing that the prescriptions were authorized, the government has to prove beyond a reasonable doubt that the defendant knowingly and intentionally acted in an unauthorized manner. Id. at 2377-78, 2382. This represented a change in Fourth Circuit law.

Mr. Kim, who was instructed on the elements of his offenses consistent with Fourth Circuit law at the time, was not advised, before he entered his pleas, that, if he made a showing that the prescriptions at issue were authorized, the government would have to prove that he knowingly and intentionally acted in an unauthorized manner. Moreover, the record demonstrates a reasonable probability that, had Mr. Kim been correctly informed of the mens rea requirement, he would not have entered the guilty pleas at issue here. For example, the district court continued his first change-of-plea hearing after he told the court that he believed he was not guilty.

Mr. Kim had the right to be accurately informed of what the government would have to prove to convict him—before he entered his pleas. Because he was not so informed here, his pleas were not knowing and voluntary and should be vacated.

Alternatively, should Mr. Kim's pleas survive this appeal, he respectfully requests that the Court vacate his sentence and remand for resentencing because the district court did not provide him with a meaningful opportunity to speak in allocution at the sentencing hearing. While the court permitted Mr. Kim to speak in allocution and his counsel to present mitigation argument, the court did so only after expressing its views on the extent of Mr. Kim's moral culpability. This Court's precedent demonstrates that the denial of a meaningful opportunity to allocute is plain error.

For these reasons, as is explained in more detail herein, Mr. Kim's guilty pleas should be vacated and the matter remanded to the district court for further proceedings. Alternatively, Mr. Kim respectfully requests vacatur of his sentence and remand for resentencing.

## STATEMENT OF THE CASE

Mr. Kim's background, family situation, and medical training provide context for the charges in this case and his arguments on appeal. This statement therefore begins with a discussion of these matters before setting forth the procedural history of the case.

### A.     Mr. Kim's background and medical training.

Mr. Kim is 75 years old.  <u>See</u> JA166.  He was born in post-World War II, South Korea and was a small child during the Korean War.  JA186, JA175.  His family was poor and relied on subsistence farming.  JA175.  Mr. Kim is the oldest of five siblings.  JA189.  As a young man, he joined the Korean Marines, and fought alongside American forces in the Vietnam War.  JA186.

At the age of 27, Mr. Kim immigrated to the United States, speaking little English at the time.  JA175, JA186.  He was the first in his family to move to the United States.  JA189.  After arriving here, Mr. Kim married a woman from Germany, Sylvia Kim, and the couple started a family in Wisconsin.  JA175, JA192.  Mr. Kim and his wife had three children, who are now adults.  <u>Id.</u>

Mrs. Kim described her "multicultural union" with Mr. Kim as "a bit atypical."  JA192.  She described herself as "an immature, sheltered, young woman," and said that her "youthfulness and inexperience in the workforce presented some problems in [their] marriage."  <u>Id.</u>  Mrs. Kim described her husband as "a very special, intelligent, and committed man," who worked two jobs to support their family.  <u>Id.</u>

In Wisconsin, the Kim family was "rather poor." JA189. Mr. Kim worked in a factory. JA176. He also gardened for a local doctor, who became Mr. Kim's mentor and inspired him to go to medical school. JA189.

In 1987, when he was approximately 40 years old, Mr. Kim enrolled in the University of Wisconsin, Milwaukee, where he obtained a bachelor's degree. JA175. In 1991, when he was approximately 44, he enrolled in medical school at the University of Wisconsin, Madison, and graduated as a Doctor of Medicine in 1995. Id.

In 1995, Mr. Kim was hired as a physician at a hospital in Pennsylvania, where he practiced for several years, and, in 2002, was hired as a staff hospitalist in Bladen County, North Carolina. JA168, JA176. Bladen County has an average annual income of about $37,000.[1]

Mr. Kim worked at the Bladen County hospital for about fifteen years. See JA168. During that time, he developed a reputation as a kind and compassionate doctor. See JA187-188, JA190. One patient reported that he was particularly skilled with making "patients of color feel at ease." JA190. Mr. Kim helped patients with, among other things, coordinating care for

---

[1] "Quick Facts, Bladen County, North Carolina," United States Census Bureau, https://www.census.gov/quickfacts/bladencountynorthcarolina (July 1, 2021).

serious illnesses like cancer and strokes, and also with the treatment of pain.  JA187-188, JA190.

Mr. Kim and his wife had a farm in Bladenboro.  <u>See</u> JA140-141.  While he made a good salary as a physician, consistent with Korean culture and his role as the oldest sibling, Mr. Kim supported not only his own family, but also his parents and siblings, many of whom he helped to immigrate to the United States.  <u>See</u> JA176, JA186, JA189, JA192.  Mr. Kim also continued to support his wife.  JA192.  He knew that Mrs. Kim had a passion for the care of animals, and he therefore helped establish a non-profit organization where she could pursue that passion.  <u>See</u> <u>id.</u>

**B.    Tammy Thompson.**

Mr. Kim met his co-defendant in this case, Tammy Thompson, around the early 2000s, when he treated her first husband, who had been injured in a workplace accident and was wheelchair bound.  <u>See</u> <u>United States v. Tammy Thompson</u>, No. 7:18-cr-200-FL-2, DE 225 at 3 (E.D.N.C. 2022). Ms. Thompson divorced her first husband in 2006.  <u>Id.</u>  Later that year, she married another man, who had a drug addiction and was incarcerated for most of their marriage.  <u>Id.</u>  Ms. Thompson divorced her second husband in

2016.  Id.  In June 2017, Ms. Thompson began speaking with Mr. Kim through Facebook, and the two met in person a week later.  JA172.

### C.    Dr. Kim's Adult Care Clinic.

As a doctor, and particularly when treating patients with pain, Mr. Kim was charged with prescribing the medications that his patients needed. See Ruan, 142 S. Ct. at 2377.  With pain management, as in other domains, prescribing practices are not uniform.  See id. at 2378.

In late 2016, Mr. Kim was counseled at the Bladen hospital for his prescribing practices.  JA168.  Mr. Kim resigned from the hospital a few months later.  Id.  At that time, Mr. Kim continued seeing patients from his home in Bladenboro.  Id.

In September 2017, Mr. Kim opened a clinic in Tabor City, in Columbus County, North Carolina.[2]  JA168.  Ms. Thompson was the clinic's office manager.  Id.  Mr. Kim initially rented an office building for the clinic, but then purchased the building, using funds from his retirement account and a

---

[2] Similar to Bladen County, Columbus County has an average annual income of about $38,000.  "Quick Facts:  Columbus County North Carolina," United States Census Bureau, https://www.census.gov/quickfacts/ columbuscountynorthcarolina (July 1, 2021).

loan.  JA173.  The clinic served many patients who did not have insurance and paid in cash, and the clinic also accepted insurance.  JA171, JA173.

As a Korean doctor in Bladen County, Mr. Kim was unique.  See JA190. His clinic was located near a school and the school raised safety concerns related to patient traffic.  JA171.  A few months after the clinic opened, in January 2018, the Columbus County Sheriff's Office began an investigation, using a confidential informant.  JA168.  In November 2018, Mr. Kim and Ms. Thompson were charged by federal indictment for transactions with the confidential informant.  See JA8.

### D.  District court proceedings.

Due in part to the COVID-19 pandemic, the district court proceedings in this case spanned several years.

### 1.  Retained counsel, motion to withdraw, and appointment of counsel.

Mr. Kim retained Raymond Tarlton and James Polk to represent him in the district court.  See JA1, JA9.

Mr. Kim initially was jailed pending trial, but, in January 2019, the district court ordered pretrial release and monitoring through home incarceration.  JA29-30, JA32.  For home incarceration, Mr. Kim was placed in the custody of his adult daughter, Michelle Kim, in Brookfield, Wisconsin.

JA30.  Mr. Kim was on 24-hour-a-day lockdown, except for medical necessities and court appearances.  Id.  He also had to surrender his medical license.  Id.

Mr. Kim's retained counsel prepared the case for trial, which originally was set for July 2020.  See JA10-19.  The trial was delayed due to the COVID-19 pandemic and rescheduled for February 2021.  JA16-18.  In the interim, a superseding indictment issued.  JA17.  The government subsequently moved to continue the trial until July 2021.  JA19-20.

In February 2021, Mr. Kim moved to modify the conditions of his pretrial release, to be reduced from home incarceration to a curfew.  JA32-33. The district court denied the motion to change the conditions to a curfew. JA37-38.  In July 2021, the government issued a second superseding indictment.  JA39.

Around the same time, the government offered a plea deal.  JA50.  As a condition of the plea deal, the government would have required Mr. Kim to stipulate that funds he had in a certain bank account were proceeds of his offenses and that about $37,000 of those funds had been withdrawn by his wife in July 2018.  Id.  Mr. Kim's counsel represented that they had been retained on a $30,000 legal fee in July 2018, which Mrs. Kim had paid, and

that the proposed plea agreement would subject that fee to forfeiture.  JA50-51.  As a result, counsel had a conflict of interest in advising Mr. Kim whether to accept the plea agreement, and, because of the conflict, counsel moved to withdraw.  JA51-52.

The district court granted the motion to withdraw, and, in July 2021, appointed counsel for Mr. Kim.  JA23, JA47-48.

### 2.    Guilty plea.

A few months later, Mr. Kim's appointed counsel reached a plea agreement with the government.

### a.    First plea agreement and change-of-plea hearing.

On November 30, 2021, the district court held a change-of-plea hearing, at which Mr. Kim's appointed counsel represented that, pursuant to a plea agreement, Mr. Kim was prepared to plead guilty to six counts of, while a physician, prescribing oxycodone outside the usual course of professional practice (counts 4, 8, 11, 14, 20, and 21 of the second superseding indictment), one count of prescribing hydrocodone and marijuana outside the usual course of professional practice (count 34), one count of aiding and abetting distribution of a quantity of marijuana, and a related conspiracy charge (count 1).  See JA39-40, JA43-44, JA62.

At the change-of-plea hearing, Mr. Kim noted that he was "having a little bit of hearing difficulty." JA59. He informed the district court that he wore a hearing aid. JA59-60. The court worked through a miscommunication with Mr. Kim about whether he was able to communicate effectively with his counsel, and instructed Mr. Kim that it was very important that he understand the court and that the court understand him. JA61.

The court advised Mr. Kim, consistent with Fourth Circuit law at the time, that, on counts 4, 8, 11, 14, 20, 21, and 34, the government had to prove that he prescribed, dispensed, or distributed a controlled substance, that he acted knowingly and intentionally, and that he did so "outside the usual course of professional practice and other than for a legitimate medical purpose." JA73-75; see United States v. McIver, 470 F.3d 550, 559 (4th Cir. 2006). The government explained that each of these charges related to prescriptions or other transactions with the confidential informant and the confidential informant's father. JA76-80.

When the court asked Mr. Kim if he committed the crimes charged in counts 1, 4, 8, 11, 14, 20, 21, 32, and 34, Mr. Kim responded:

> Your Honor, nothing I was doing willfully. I'm not guilty of any of this, Your Honor. I was just advised by my counsel that this is the only way I can alleviate—mitigate my sentence.

JA86.

The court gave Mr. Kim the opportunity to speak with his counsel. <u>Id.</u> Subsequently, the court asked counsel what Mr. Kim would say if the court asked him again if he was guilty, because when the court had asked him earlier, Mr. Kim "seemed to have some real angst." <u>Id.</u> Counsel responded that they were not in a position to enter a guilty plea that day, and asked for a continuance. JA87. The court set aside the plea agreement and continued the hearing. JA87-89.

### b.     Second plea agreement.

Over the next month, Mr. Kim's counsel negotiated a revised plea agreement with the government, under which Mr. Kim agreed to plead guilty to counts 1, 4, 8, 11, 14, 20, 21, and 32 of the second superseding indictment (<u>i.e.,</u> the same counts covered by the original plea agreement, excluding count 34). JA193. The plea agreement contained an appeal waiver. <u>Id.</u>

The plea agreement stated that, for counts 4, 8, 11, 14, 20, and 21, the government had to prove that Mr. Kim "prescribed, dispensed or distributed

the [controlled substance] outside the usual course of professional practice and other than for a legitimate medical purpose." JA198-203.

The parties stipulated to a base offense level of 24[3] under U.S.S.G. § 2D1.1(c), based on a converted drug weight between 100 kilograms and 400 kilograms; upward adjustments of two points each for maintaining a premises for the purpose of manufacturing or distributing a controlled substance (§ 2D1.1(b)(12)), aggravating role in the offense (3B1.1(c)), and abuse of a position of trust (§ 3B1.3); and a downward adjustment of two points for acceptance of responsibility (§ 3E1.1(a)). JA205-206.

### c.    Second change-of-plea hearing.

The district court reconvened the change-of-plea hearing on December 28—about one month after the first hearing. JA93. The court asked whether it was Mr. Kim's "intention to plead guilty to [counts] 1, 4, 8, 11, 14, 20, 21, and 32," and counsel responded in the affirmative. JA94. The court noted that it viewed the hearing as a continuation of the November 30 hearing, and thus, with counsel's agreement, did not repeat the elements of the offenses. JA94-96.

---

[3] Mr. Kim was held responsible for the drugs associated with each of the counts subject to the plea agreement. See JA98-99, JA168-170, JA178-179.

The government stated that controlled purchases with the confidential informant supplied a factual basis for the plea. JA96. The government described six visits by the informant to Mr. Kim's clinic. JA96-99.

The first visit occurred on January 30, 2018. JA96. The government asserted that, during the visit, office staff took the informant's blood pressure and collected basic information from him. Id. The informant then went back to see Mr. Kim, who asked what was wrong, pulled up the informant's medical and prescription history, and performed a drug screen. JA96-97. As a result of this visit, Mr. Kim wrote a prescription for methadone. JA97. The clinic charged $200 for this first visit, and for each subsequent visit.

The informant returned to the clinic on February 27, 2018, and March 28, 2018, for second and third visits. JA97-98. After waiting for over an hour each time, he was called back to see Mr. Kim. Id. According to the government, Mr. Kim performed minimal medical examination. After the second visit, Mr. Kim wrote the informant a prescription for oxycodone, and after the third visit, he wrote a prescription for oxycodone and OxyContin. Id.

The government discussed three other visits during which the informant saw Mr. Kim, received prescriptions, and also purchased marijuana from Ms. Thompson. Id. Sometimes Mr. Kim was present when

the informant purchased marijuana from Ms. Thompson, and on one occasion, he collected money from the informant.  Id.  During the last visit, Mr. Kim agreed to write a prescription for the informant's father, who had not been a patient and was not present that day.  JA98.

Following the government's statement of the factual basis, the court asked Mr. Kim if he was guilty of counts 1, 4, 8, 11, 14, 20, 21, and 32, and he responded that he was.  JA104.  The court found that Mr. Kim's plea was knowing and voluntary, and accepted the plea as to the counts stated.  Id.

### 3.  Sentencing.

Presence report.  The probation officer prepared a presentence report that applied the base offense level, enhancements, and adjustments that the parties had stipulated to in the plea agreement, and did not apply any other enhancements or adjustments.  JA178-179.  Mr. Kim's total offense level was 28, his criminal history score was zero, and his criminal history category was I.  JA174, JA179.  The resulting guideline range was 78 to 97 months.  JA179.  Neither the defense nor the government objected to the presentence report.  JA183.

The presentence report described the facts of the counts of conviction consistent with the factual basis that the government had provided at the

second change-of-plea hearing.  See JA168-170.  It also recounted information

that investigating agents had learned by speaking with Ms. Thompson and

other clinic staff, which expanded beyond prescriptions written to the

confidential informant.    JA170.    The presentence report stated that

Ms. Thompson brought patients to the clinic and served as the office

manager.[4]  JA13.  It noted that an employee of the clinic stated that one of

the clinic's patients had died of an overdose in April 2018.  JA171.  The

presentence report did not contain additional detail about this statement.

See id.

The presentence report also summarized a report by Dr. Greenblatt of

Duke University School of Medicine, who, on behalf of the government,

reviewed records from the clinic and opined that Mr. Kim was not meeting

legitimate standards of medical care.[5]  JA172.  The presentence report did not

---

[4] Ms. Thompson stipulated to a four-point organizer or leader enhancement under U.S.S.G. § 3B1.1(a).  Thompson, No. 7:18-cr-200-FL-2, DE 225 at 2.

[5] This Court has held that the government may not rely on summary reports to convict a physician under section 841(a)(1), and instead must prove that each prescription at issue was unlawful.  United States v. Tran Trong Cuong, 18 F.3d 1132, 1141-43 (4th Cir. 1994); see also United States v. Brizuela, 962 F.3d 784, 797 (4th Cir. 2020) ("[A] doctor's violation of § 841 is prescription specific, and writing a prescription only violates § 841 if, in

discuss typical prescribing practices in Columbus County, where Mr. Kim's clinic was located.  See id.

Sentencing memorandum.  In a sentencing memorandum, defense counsel argued for a downward variance based on Mr. Kim's advanced age of 75 years, along with his compliance on home incarceration, medical conditions, history and characteristics, and acceptance of responsibility. JA110.  Counsel maintained that, as a result of his age, and the fact that he had surrendered his medical license, Mr. Kim was at a low risk of re-offending.  JA110, JA112.  Further, Mr. Kim had been fully compliant on house arrest, and thus a short custodial sentence with an extended period of probation would be appropriate.  JA111-112.  Such a sentence would be appropriate, also, because Mr. Kim suffered from diabetes, high cholesterol, and high blood pressure, and thus would be exposed to high health risks during incarceration, especially during the COVID-19 pandemic.  Id.

Counsel pointed to Mr. Kim's difficult childhood in South Korea and his support for his family, including his disabled brother Jong Woon Kim. JA111, JA175.  Counsel reported that, over the course of his many

---

doing so, the doctor strays from bounds of professional medical practices in treating that specific patient." (emphasis omitted)).

conversations with Mr. Kim, he was struck by the importance Mr. Kim placed on being a doctor. JA112. Mr. Kim described, on numerous occasions, the terrible shame he felt for dishonoring his family. Id. Counsel explained that the focus on his family was, in large part, based on Korean culture. Id.

Counsel also emphasized that, before the charges at issue in this case, Mr. Kim had spent 15 years as a Bladen County doctor, providing valuable medical service to that community, and that this service, to some degree, offset the harm of the charged conduct. JA112.

Sentencing hearing. The district court started the sentencing hearing by noting the counts for which Mr. Kim was to be sentenced. JA117. Addressing Mr. Kim, the court then said the following:

> I'm familiar with your background and history. I've read the presentence report. I've considered the defendant's sentencing memorandum.
>
> I'm aware that 48 years ago approximately you entered the United States of America; at about the time you were 27 years old. And frankly, you have enjoyed a very prosperous life in this country, at times making over $300,000 a year. But obviously, as presented, there were concerns about your methodology of dispensing drugs at the hospital that you were working for, and ultimately your employment was severed.
>
> And that is when this pill mill, so destructive to the local community and so pervasive that it attracts people from other states to you to obtain illegally drugs, that's when that all starts up.

> And it's near a school that has to change its method of operation from time to time because of what's going on at your place.
>
> And this is very destructive behavior for which you stand today to be sentenced. This is killing people. This is destroying families. This is wrecking communities.
>
> And sadly, you're not the first doctor that I will sentence for this, and I'm sure you won't be the last. And that's a very sad comment because you understand medicine; you know what this does to people's physiology; you know what this does to mental processes. And yet you used your licensing privileges to accomplish the crimes.

JA117-118.

The court summarized the presentence report's guideline calculations and Mr. Kim's guideline range, and noted that the court had reviewed character letters from Mr. Kim's family members, patients, and friends. JA119. The court then asked defense counsel what he believed to be the appropriate sentence. Id.

Counsel explained the deep shame that Mr. Kim felt for the conduct at issue, and how that deep sense of shame affected his conduct during the court proceedings. See JA121. For the reasons stated in his sentencing memorandum, including that Mr. Kim already had been on home incarceration for three years, with no incident, counsel argued for a prison sentence of a year and a day and a supervised-release term of three years. JA123.

The court maintained that Mr. Kim's conduct "was a crime of greed," and asked why, when he resigned from the Bladen hospital, he went down

the path he did, rather than do "so many other things he could have done."

JA123-124.  Counsel referenced the character letter from Mr. Kim's wife, and

responded that, while he did not know why Mr. Kim had made the choices

he had made, that his relationship with Ms. Thompson was "part of [a] path

down this very dark hole that led him before [the court] to be sentenced."

JA124.

> Mr. Kim spoke in allocution, stating:
>
> Your Honor, I'm sorry for making mistakes.  And I made a poor
> judgment of associating with some unscrupulous people, and I
> was foolish and naive.  And I committed this unprofessional
> conduct.  But I had no—I didn't mean to hurt anyone, and I
> didn't mean to break any laws.  I just sorry for all this evolved.
> And I just ask for your leniency on my sentencing.

JA132.

The government requested a sentence within the guideline range, and,

consistent with the government's recommendation, imposed a guideline

sentence of 78 months' imprisonment and 3 years of supervised release.

JA128, JA132.

### E.    Appeal, and <u>Ruan v. United States</u>.

Following the sentencing hearing, the court entered judgment.  JA148-

155.  Mr. Kim filed a notice of appeal the next day, on April 8, 2022.  JA156.

About two and a half months later, the Supreme Court, in <u>Ruan v. United States</u>, held that when the government charges a physician with prescribing controlled substances in violation of section 841(a)(1), and the defendant makes a showing that the prescriptions were authorized, the government has to prove beyond a reasonable doubt that the defendant knowingly and intentionally acted in an unauthorized manner.  142 S. Ct. 2370, 2382 (June 27, 2022).

## SUMMARY OF THE ARGUMENT

Mr. Kim's guilty plea is constitutionally invalid because he was not informed, before he pled guilty, that, to convict him of each of counts 4, 8, 11, 14, 20, and 21, the government would have to prove that he <u>subjectively</u> intended to act outside the usual course of professional medical practice and not for a legitimate medical purpose.  In <u>Ruan</u>, decided shortly after Mr. Kim pled guilty to each of these counts, the Supreme Court held that, if the defendant makes a showing that his conduct was authorized, the government must prove, not only that the prescription was unauthorized, but that the defendant <u>knowingly or intentionally</u> prescribed a controlled substance in an unauthorized manner. Before he entered his pleas, Mr. Kim was not advised of this <u>mens rea</u> requirement, which represents a change in Fourth Circuit law.

In light of <u>Ruan</u>, the district court's acceptance of Mr. Kim's guilty pleas was plain error. That error affected Mr. Kim's substantial rights because there is a reasonable probability that he would not have pled guilty if he had been informed that the government had to show that he subjectively intended to write unauthorized prescriptions. Under these circumstances, allowing Mr. Kim's pleas to stand would have a serious effect on the fairness, integrity, and reputation of the judicial proceedings.

Alternatively, Mr. Kim respectfully requests vacatur of his sentence and remand for resentencing because of the district court's pre-sentence comments on the extent of his moral culpability, which denied him a meaningful opportunity to speak in allocution.

## ARGUMENT

**I. Mr. Kim's Guilty Pleas Are Constitutionally Invalid Because He Was Not Informed that, on a Section 841(a)(1) Charge, the Government Must Prove that a Physician Knowingly or Intentionally Acted in an Unauthorized Manner.**

### <u>Standard of Review</u>

This Court reviews <u>de novo</u> whether the district court properly identified the elements that the government would have to prove to convict the defendant. <u>See</u> <u>United States v. Ellis</u>, 121 F.3d 908, 923 (4th Cir. 1997) (discussing jury instructions).

Practically speaking, in the guilty-plea context, defendants rarely object to a district court's articulation of the elements of an offense. Even if the law has subsequently changed, where a defendant fails to object to a district court's error in identifying the elements of an offense, this Court's review is for plain error. See Fed. R. Crim. P. 52(b); Greer v. United States, 141 S. Ct. 2090, 2096 (2021).

Under the plain-error standard, the defendant must show that (1) the error was plain, (2) the error affected the defendant's substantial rights, meaning "there is 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different,'" and (3) "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." United States v. Heyward, 42 F.4th 460, 465 (4th Cir. 2022) (quoting Puckett v. United States, 556 U.S. 129, 135 (2009)).

Under the plain-error standard, this Court has found reversible error where, between the time of trial-court proceedings and appeal, there has been a change or clarification in the law relevant to a defendant's guilty plea. See id. at 465, 471; see also Henderson v. United States, 568 U.S. 266, 279 (2013).[6]

---

[6] Although Mr. Kim agreed to an appeal waiver in his plea agreement, he did not waive his ability to attack his plea under Ruan. See United States v. Balde, 943 F.3d 73, 95 (2d Cir. 2019) (holding that a defendant did not waive his ability to attack his plea under Rehaif v. United States, 139 S. Ct.

**<u>Discussion</u>**

**A.   Under <u>Ruan</u>, the Government Must Prove that a Physician Charged under Section 841(a) Knowingly or Intentionally Acted in an Unauthorized Manner.**

In <u>Ruan</u>, the Supreme Court held that in section 841(a) prosecutions, the government "must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner."  142 S. Ct. at 2376.

Section 841(a)(1) makes it unlawful, "[e]xcept as authorized . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance."  21 U.S.C. § 841(a)(1).  The Supreme Court explained that section 841's "knowingly or intentionally" <u>mens rea</u> applies to the "except as authorized" clause.  <u>Ruan</u>, 142 S. Ct. at 2376.  This means that once a defendant, such as a physician, has produced evidence that his or her conduct was authorized, the burden shifts to the government to prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner.  <u>Id.</u>

---

2191 (2019), and noting that, when a change in law affects the <u>mens rea</u> requirement for an offense that was not present when a defendant pled guilty, "it is hard to imagine how a defendant's plea could be knowing and voluntary").

Thus, under <u>Ruan</u>, to prosecute a physician under section 841(a)(1), the government must prove that the physician prescribed a controlled substance outside the usual course of his professional practice and not for a legitimate medical purpose.  <u>See id.</u>  In reaching this holding, the Court explained that the "lack of authorization is often what separates wrongfulness from innocence" in section 841(a) prosecutions.  <u>Id.</u> at 2377.

**B.    The District Court's Acceptance of Mr. Kim's Guilty Pleas Was Plain Error Because Mr. Kim Was Not Correctly Informed of Section 841(a)'s <u>Mens Rea</u> Requirement.**

Federal Rule of Criminal Procedure 11 requires the district court, before accepting a defendant's guilty plea, to ensure that the defendant understands the nature of the charges to which the plea is offered.  Fed. R. Crim. P. 11(b)(1)(G); <u>United States v. Williams</u>, 811 F.3d 621, 622 (4th Cir. 2016).  A guilty plea does not qualify as knowing or intelligent unless the defendant first receives "a real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." <u>Bousley v. United States</u>, 523 U.S. 614, 618 (1998).

A change in the law with respect to the elements of a claim gives rise to plain error in the guilty-plea context if the defendant was not correctly informed of the elements of the offense to which he pled guilty.  As this

Court recently explained, "regardless 'of whether a legal question was settled or unsettled at the time' of the trial court proceedings, 'it is enough that an error be "plain" at the time of appellate consideration.'" Heyward, 42 F.4th at 465 (quoting Henderson, 568 U.S. at 279). "[P]lain error" covers both "trial court decisions that were plainly correct at the time when the judge made the decision" and decisions where "the law at the time of the trial judge's decision was neither clearly correct nor incorrect, but unsettled." Henderson, 568 U.S. at 274.

Ruan presents a change in the law with respect to the mens rea required under section 841(a)(1). Before Ruan, the Fourth Circuit held that a physician should be acquitted if he "reasonably believed" that his prescription was within the usual course of professional practice. E.g., United States v. Hurwitz, 459 F.3d 463, 479-82 (4th Cir. 2006).

This good-faith defense was an entirely objective standard. Indeed, this Court expressly held in Hurwitz that the inquiry "must be an objective one." Id. at 478; see also id. at 480 ("Because the instruction proffered by Hurwitz set forth a subjective standard for measuring his good faith, the instruction was not a correct statement of the law."); United States v. Purpera, 844 F. App'x 614, 627 (4th Cir. 2021) (in the context of section

841(a), rejecting as "legally incorrect" a standard for good faith that is entirely subjective).

Moreover, this Court treated good faith as a defense, rather than a requirement for which the government has the burden of proof.  See United States v. Alerre, 430 F.3d 681, 686 (4th Cir. 2005) (discussing good faith as a defense); McIver, 470 F.3d at 560 (describing "good faith [a]s a defense to a charge under § 841(a)(1)"); accord United States v. Wexler, 522 F.3d 194, 205 (2d Cir. 2008) ("A physician charged with the illegitimate distribution of controlled substances, and thus with deviating from the usual course of medical practice, may raise a good-faith defense to be disproved by the Government beyond a reasonable doubt." (emphasis added)).

Ruan expressly rejected the objective good-faith standard previously utilized by this circuit, and put the burden of proof on the government regarding the mens rea requirement.  Ruan, 142 S. Ct. at 2381; see also United States v. Blume, No. 5:18-CR-00026, 2022 WL 3701449, at *1 (S.D. W. Va. Aug. 26, 2022) (noting that Ruan "has dramatically changed how Fourth Circuit jurisprudence had been over the past fifteen years regarding the scienter requirement as it relates to a physician charged with prescribing controlled substances in violation of [21] U.S.C. § 841").  Because that change in the law

occurred after Mr. Kim's plea hearings, Mr. Kim was deprived of adequate notice of what the government would have to prove to convict him of each of counts 4, 8, 11, 14, 20, and 21.

To be sure, in the plea agreement, the government stated—consistent with the Fourth Circuit law discussed above—that, to convict Mr. Kim of offenses under section 841(a)(1), it would have to prove that Mr. Kim prescribed a controlled substance, that he acted knowingly and intentionally, as a general matter, and that he prescribed the controlled substance "outside the usual course of professional practice and other than for a legitimate medical purpose." JA198-203. The plea agreement did not state that the government needed to prove both that Mr. Kim knowingly or intentionally wrote prescriptions for controlled substances and that he knowingly or intentionally wrote the prescriptions outside the usual course of professional practice and other than for a legitimate medical purpose. See id.

Similarly, at the change-of-plea hearing, the district court, also consistent with the Fourth Circuit law discussed above, advised Mr. Kim that on counts 4, 8, 11, 14, 20, and 21, the government had to prove that he prescribed a controlled substance, that he acted knowingly and

intentionally, and that he did so "outside the usual course of professional practice and other than for a legitimate medical purpose." JA73-75. The court did not inform Mr. Kim that "knowingly or intentionally" applied to both the act of writing prescriptions and to whether he wrote the prescriptions in the usual course of his professional practice or for a legitimate medical purpose. See id.

At no point did the government or the district court advise Mr. Kim that if he made a showing that the prescriptions that he wrote were authorized, the burden would shift to the government to prove his subjective intent. Under these circumstances, and pursuant to Ruan, the district court plainly erred by accepting Mr. Kim's guilty pleas without correctly advising him on the government's burden of proof.

## C. There Is a Reasonable Probability that Mr. Kim Would Not Have Pled Guilty if He Had Been Informed of the Mens Rea Requirement under Section 841(a).

The error described above affected Mr. Kim's substantial rights, because there is a reasonable probability that if the district court had instructed him on the mens rea requirement under section 841(a), articulated in Ruan, he would not have pled guilty.

In the guilty-plea context, a defendant can establish that an error affected his substantial rights by showing "a reasonable probability that, but for the error, he would not have entered the plea." United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004).

This Court and the Supreme Court have recently analyzed plain errors in the guilty-plea context in cases involving Rehaif [7] errors, where the district court failed to advise the defendant of a mens rea requirement in the underlying charge. See Greer, 141 S. Ct. 2090; Heyward, 42 F.4th 460. In both cases, the law changed between the time of the defendant's guilty plea and the appeal.[8]

Both Greer and Heyward involved felon-in-possession charges. They came out different ways on whether the district court's failure to instruct the

---

[7] In Rehaif v. United States, the Supreme Court held that in prosecuting a felon-in-possession charge under 18 U.S.C. §§ 922(g) and 924(a)(2), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 129 S. Ct. 1291, 2200 (2019). A Rehaif error occurs when the district court fails to give notice that a felon-in-possession charge requires the government to prove that the defendant knew of his status as a felon when he possessed a firearm.

[8] Since this Court has not had the opportunity to decide a case under Ruan, these cases are instructive, but do not answer the question presented here.

defendant on the <u>mens rea</u> element affected the defendant's substantial rights, and those differences highlight that the error here affected Mr. Kim's substantial rights.

In <u>Greer</u>, the Supreme Court held that the defendant could not satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. 141 S. Ct. at 2097. The Court explained that the reason was simple: "If a person is a felon, he ordinarily knows he is a felon." <u>Id.</u>

In <u>Heyward</u>, however, this Court held that the defendant satisfied the substantial-rights prong of the plain-error test based on the defendant's consistent denial of his status as a felon and evidence that the defendant did not know of his status as a felon when he possessed a firearm. 42 F.4th at 470; <u>see also</u> <u>id.</u> (noting that the defendant "hesitated during the plea colloquy"). Based on this, the Court held that there was at least a "'reasonable probability that [the defendant] would not have pled guilty' had the district court 'correctly advised him of the <u>mens rea</u> element of the offense.'" <u>Id.</u> (quoting <u>Greer</u>, 141 S. Ct. at 2097).

This case is like <u>Heyward</u>. The record here shows in more ways than one a reasonable probability that if Mr. Kim had known that the government

had to make this additional showing of proof, he would not have pled guilty to the section 841(a)(1) counts.[9]

First, like the defendant in <u>Heyward</u>, Mr. Kim waivered when asked about his guilt. At the first change-of-plea hearing, when asked whether he committed the crimes for which he was being charged, he responded, "Your honor, nothing that I was doing willfully [sic]." JA86. He further stated that he was "not guilty of any of this." <u>Id.</u> The district court noted that Mr. Kim "seemed to have some real angst." <u>Id.</u>

Second, the government's stated factual basis for the pleas did not include evidence of Mr. Kim's knowledge or intent to act in an unauthorized manner with regard to each prescription at issue. For example, on count four, the government proffered that a confidential informant visited Mr. Kim's clinic, received limited medical examination from Mr. Kim, and received a prescription for oxycodone. JA77, JA97. Similarly, on count eight, the government proffered that the same confidential informant visited

---

[9] Moreover, unlike the <u>mens rea</u> requirement at issue in a <u>Rehaif</u> error, which concerns whether the defendant knew about his status as a felon, the <u>mens rea</u> requirement at issue in a <u>Ruan</u> error involves a more complex issue—a physician's subjective knowledge or intent to write prescriptions for a legitimate medical purpose.

Mr. Kim's clinic, received limited medical examination, and received prescriptions for oxycodone and OxyContin.  Id.

The government's evidence did not speak to whether Mr. Kim subjectively believed that each prescription served a legitimate medical purpose.  In fact, the government proffered evidence that on one or more visits, the confidential informant, in fact, received medical examination. JA76-77, JA96-97.  While the government characterized the medical examination as limited, that characterization alone did not demonstrate that Mr. Kim subjectively intended to issue unauthorized prescriptions.

Thus, the record shows a reasonable probability that if Mr. Kim had known that the government had to prove that he knew or intended to write prescriptions for an unauthorized purpose, it would have changed his decision to enter the pleas at issue here.

### D. Allowing the Plea Agreement to Stand Would Have a Serious Effect on the Fairness, Integrity, and Public Reputation of Judicial Proceedings.

The district court's error also satisfies the final requirement of the plain-error standard—that "the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings."  Greer, 141 S. Ct. at 2096-97.

In Heyward, this Court held that where the district court failed to inform the defendant about a mens rea requirement in a criminal statute—a change in the law that occurred after the defendant's plea hearing—allowing the plea to stand "would seriously affect the fairness, integrity, and public reputation of judicial proceedings."  Heyward, 42 F.4th at 471.

The Court explained that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction." Heyward, 42 F.4th at 471 (quoting Boykin v. Alabama, 395 U.S. 238, at 242 (1969)).  "When courts accept guilty pleas, they permit defendants to waive numerous constitutional rights and enter a conviction because the plea 'serves as a stipulation that no proof by the prosecution need be advanced,' thus 'ending [the] controversy.'"  Id. (quoting Boykin, 395 U.S. at 242).  Thus, "[w]ith such significant consequences at stake, the integrity and public reputation of convictions obtained via guilty pleas rest in significant measure on the fact that the defendant was fully informed before entering the plea." Id. (citing Boykin, 395 U.S. at 243-44).

Because of the Ruan error, Mr. Kim entered the plea agreement after having been misinformed about a material aspect of the crimes to which he was pleading guilty.  Like in Heyward, that error resulted in Mr. Kim

unknowingly agreeing that the government need not advance proof that he knew that he was writing, or that he intended to write, each of the prescriptions at issue outside of the usual course of professional practice or not for a legitimate medical purpose.  Id.  These circumstances raise serious questions about whether Mr. Kim would have entered the plea agreement at issue here, and his guilty pleas, if he had been fully and correctly informed about the government's burden of proof on each of these offenses.  As a result, allowing the current pleas to stand without further inquiry would seriously affect the fairness, integrity, and public reputation of judicial proceedings.  Id.

## II.    Mr. Kim's Sentence Was Fundamentally Unfair Because the District Court Failed to Provide Him with a Meaningful Opportunity to Speak in Allocution.

### Standard of Review

Before imposing sentence, a district court "must allow the parties' attorneys to comment on . . . [all] matters relating to an appropriate sentence."  Fed. R. Crim. P. 32(i)(1)(C).  The court must also "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."  Id. R. 32(i)(4).

Where, a defendant does not object at sentencing to non-adherence to these rules, this Court reviews for plain error.  United States v. Cole, 27 F.3d 996, 998 (4th Cir. 1994).  Under a plain-error standard, this Court has found reversible error when there are "grounds upon which the court might have imposed a reduced sentence."  Id. at 999; accord United States v. Muhammad, 478 F.3d 247, 250-51 (4th Cir. 2007) (vacating even though the record "cast[] some doubt on whether [the defendant] could have persuaded the district court to impose a lesser sentence").[10]

### Discussion

### A.      The Background and Purposes of Rule 32 and Allocution.

One purpose of allocution is to "make the defendant a meaningful part of the sentencing process."  "What Is an Allocution Statement?" American Bar Association (Nov. 20, 2018).[11]  "Allowing a convicted defendant to individually 'have his say' recognizes the seriousness of the sentence to be imposed and the necessity that it be viewed as a legitimate expression of

---

[10] Mr. Kim's appeal waiver did not waive claims that his sentence was fundamentally unfair.  See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); but see United States v. Quinones, 707 F. App'x 184, 185-86 (4th Cir. 2017) (unpublished) (concluding Rule 32 error was waived by plea agreement, but acknowledging some contrary authority).

[11] https://www.americanbar.org/groups/public_education/ publications/teaching-legal-docs/what-is-an-allocution-statement-/.

state authority." Kimberly A. Thomas, <u>Beyond Mitigation: Towards a Theory of Allocution</u>, 75 Fordham L. Rev. 2647, 2678 (2007). Moreover, with the prevalence of guilty pleas, "for most defendants, vocal participation in their defense does not begin until after they are granted their right to allocution during sentencing." Celine Chan, <u>The Right to Allocution: A Defendant's Word on Its Face or Under Oath?</u>, 75 Brooklyn L. Rev. 579, 580-81 (2009). Allocution thus plays an important role, not only in assisting the court in fashioning an appropriate sentence, but also in creating public legitimacy of the sentencing proceeding, itself.

The language and structure of Rule 32 recognize this role. As the Supreme Court has explained, the drafters of Rule 32 "intended that the defendant be personally afforded the opportunity to speak <u>before</u> imposition of sentence." <u>Green v. United States</u>, 365 U.S. 301, 304 (1961) (emphasis added). Thus, the Court instructed that "trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak <u>prior to sentencing</u>." <u>Id.</u> at 305 (emphasis added).

This Court and the Supreme Court have further instructed that sentencing judges should "withhold [their] final judgment until after the parties have had a full opportunity to present their evidence and their

arguments." United States v. Herder, 594 F.3d 352, 363 (4th Cir. 2010) (quoting Irizarry v. United States, 553 U.S. 708, 715 (2008)). This is because "sentencing is a fluid and dynamic process and the court itself may not know until the end whether a variance will be adopted, let alone on what grounds." Id. (quotation omitted).

### B. The District Court's Pre-Sentence Comments Were Plain Error.

In this case, while the district court eventually offered Mr. Kim an opportunity to speak in allocution, it did so only after first expressing its views on the extent of Mr. Kim's moral culpability. JA117-119. While here, as in any case, the district court had discretion to interpret the facts, see Gall v. United States, 552 U.S. 38, 52 (2007), it was inappropriate under Rule 32 and Green for the court to comment as it did at the outset of the sentencing hearing, before giving defense counsel and Mr. Kim an opportunity to be heard. Doing so risked chilling Mr. Kim's willingness to speak in allocution—indeed, his allocution was brief, and reactive to the court's colloquy—and undermined the public legitimacy of Mr. Kim's sentencing hearing. See JA132.

The district court's commenting at the sentencing hearing before giving Mr. Kim an opportunity to allocute satisfies the plain-error test.

This Court has held that when a district court does not offer a defendant a sufficient opportunity to allocute, the court commits plain error. See Cole, 27 F.3d at 998.[12]  Here, while the district court eventually offered Mr. Kim an opportunity to speak in allocution before announcing his sentence, it did so only after first commenting on his background and moral culpability.  See supra pp. 20-22.  Consistent with Cole and the discussion above, this was plain error.

This error affected Mr. Kim's substantial rights.  Under Cole, a defendant's substantial rights are affected if he can show that, if he had been afforded a meaningful allocution, his sentence might have been lower.  Cole, 27 F.3d at 999; see also United States v. Carter, 773 F. App'x 736, 737-38 (4th Cir. 2019) (recognizing plain error where there was a possibility of a different sentence).  Mr. Kim can do so here.

---

[12] Other courts have found plain error where the district court allowed the defendant to speak but made comments that undercut the defendant's right to a meaningful allocution.  See, e.g., United States v. Landeros-Lopez, 615 F.3d 1260, 1268 (10th Cir. 2010) (holding that the district court prematurely adjudged a defendant's sentence by "definitively announcing [the defendant's] sentence before providing him with an opportunity to speak on his own behalf"); United States v. Luepke, 495 F.3d 443, 450 (7th Cir. 2007) (explaining that "the district court actually must take steps to communicate effectively to the defendant that, through his statement, he has a meaningful opportunity to influence the sentence").

Several mitigating factors were present in this case, which suggest that, had Mr. Kim been given a meaningful chance to speak in allocution, his sentence might have been lower. Those mitigating factors included Mr. Kim's age (75), and the fact that he already had served three years on home confinement, during which he was on 24-hour-a-day lockdown. See JA110, JA112. Other mitigating factors included Mr. Kim's history of providing legitimate medical service, and his life-long service to his family. JA111, JA175.

This Court has held that, with an error like the one here, the "fairness and integrity of the court proceedings [would be] brought into serious dispute were [this Court] to allow the sentence to stand." Cole, 27 F.3d at 999. Indeed, an error involving a denial of allocution "is not the sort of 'isolated' or 'abstract' error" that can be said not to "impact the 'fairness, integrity or public reputation of judicial proceedings.'" United States v. Paladino, 769 F.3d 197, 203 (3d Cir. 2014) (quoting United States v. Plotts, 359 F.3d 247, 251 (3d Cir. 2004)).

Accordingly, because Mr. Kim was denied a meaningful opportunity to speak in allocution, and because he might have received a different sentence

had he been provided such an opportunity, this Court should notice the error, vacate his sentence, and remand for resentencing.[13]

## CONCLUSION

For the reasons explained above, Mr. Kim respectfully requests that the Court vacate his guilty pleas and remand to the district court for further proceedings. Alternatively, Mr. Kim respectfully requests that the Court vacate his sentence and remand to the district court for resentencing.

---

[13] Mr. Kim also respectfully requests that, should the matter be remanded for resentencing, the Court consider directing that the case be reassigned. See United States v. Neal, 101 F.3d 993, 1000 (4th Cir. 1996) (noting that, even where there is no question that the district court acted with personal integrity, "the appearance of fairness and impartiality [may] best [be] advanced by reassignment to another district judge").

## REQUEST FOR ORAL ARGUMENT

Mr. Kim respectfully requests oral argument, which would aid the Court's consideration of the issues presented in this appeal, including his argument under <u>Ruan</u>, which presents an issue of first impression in this Court.

ELLIS & WINTERS LLP

/s/ Michelle A. Liguori
Michelle A. Liguori
N.C. State Bar No. 52505
Post Office Box 33550
Raleigh, NC  27636
(919) 865-7000
michelle.liguori@elliswinters.com

Scottie Forbes Lee
N.C. State Bar No. 50833
Post Office Box 2752
Greensboro, NC  27402
(336) 217-4085
scottie.lee@elliswinters.com

Attorneys for Defendant-Appellant
Jong Whan Kim

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this brief complies with the applicable typeface, type style, and type-volume limitations. This brief was prepared using a proportionally spaced type (Constantia, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 8,936 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

September 6, 2022                          /s/ Michelle A. Liguori
                                          Michelle A. Liguori